IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| LINDA ANN KENDRICK, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.: 4:07-CV-0253-RBP** |
| | ) | |
| CLIENT SERVICES INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

MEMORANDUM OPINION

This cause comes on to be heard upon the Motion for Summary Judgment filed by

Defendant Client Services, Inc., (hereinafter "CSI") on November 1, 2007.

FACTS[1] AND PROCEDURAL HISTORY

Plaintiff is a resident of St. Clair County, Alabama. Plaintiff defaulted on a debt owed to

Chase Bank in the amount of approximately $9,100.[2] On February 7, 2006, an employee for

CSI, Tim Schroeder, called Plaintiff on her cell phone in an attempt to collect the debt. Mr.

Schroeder identified himself under his pseudonym, or "desk name," as Tim Ryan and stated that

he was calling concerning a debt that Plaintiff owed to Chase Bank.[3] Ryan asked that Plaintiff

"settle" her debt with Chase by paying $7,300.00 or getting a friend or relative to charge said

sum on (his)(her) credit card. Ryan gave Plaintiff a telephone number to contact him by 5:30

p.m. that day "or else." At no time during said conversation did Ryan identify CSI or state that

---

[1] The facts are stated favorably to Plaintiff.

[2] Plaintiff does not deny the debt, her default, or the fact that she still owes the debt. Plaintiff Dep. at 169.

[3] For purposes of consistency and clarity, Schroeder will be referred to as "Ryan" in this opinion.

Plaintiff had the right to dispute the validity of the debt or any portion thereof, or directly state that the call was to collect a debt and any information obtained would be used for that purpose. Ryan's call ended when the call was abruptly "dropped" by the cell phone carrier.  Later that same day, Ryan tried unsuccessfully to call Plaintiff back.

CSI also timely sent Plaintiff a letter notifying her of its collection efforts on behalf of Chase Bank in which it purported to give her thirty (30) days to dispute the debt.  This letter did not mention Ryan's (or Schroeder's) name.

On February 9, 2006, based upon a telephone number in his records, Ryan attempted to call Plaintiff at work.  However, CSI actually contacted another individual by the name of Linda G. Kendrick (hereinafter "Linda G."), who was also a resident of St. Clair County, Alabama.[4] Upon realizing his mistake, Ryan ended the call and had no further contact with Linda G.  He also deleted Linda G's number from Plaintiff's information at CSI.  Linda G. worked in the same office as Plaintiff's husband, Robert Wayne Kendrick, whom CSI also contacted about the Chase debt.  Unbeknownst to CSI, Robert Wayne Kendrick and Plaintiff had been separated for more than five years.[5]  Despite learning this, Ryan called Robert Wayne Kendrick several times and threatened to sue Robert Wayne Kendrick even though he was not legally obligated with Plaintiff on any Chase Bank debt.  Ryan also threatened to cause Robert Wayne Kendrick's house and

---

[4]CSI was not the only collection agency or creditor to contact Linda G. in mistaken belief that it was contacting Plaintiff.  It is undisputed that Linda G. received calls from other creditors and collectors, leading her to conclude that Plaintiff was using her identifying information in obtaining credit cards and to avoid creditors and collectors.

[5]CSI notes  that Plaintiff's separation from her husband was not amicable and that there was  little possibility of the two reconciling.  To support this contention, CSI cites portions of Plaintiff's deposition where she stated that: Robert Wayne Kendrick threatened to burn down their son's house; he pushed Plaintiff against a wall, bruising her hips; he "hit the son's car, drove it up under the house and proceeded to get a gas can out"; police arrested her husband and Plaintiff "never went home since then"; "I've always been afraid of him"; "I just try to stay my distance [from him]."

property to be sold to pay Plaintiff's debt.[6]   CSI never sent any writing to Robert Wayne Kendrick disclosing his rights to dispute the alleged debt.[7]   The Kendricks remained legally married until they were divorced in August 2006.

CSI's records show the following telephone calls to Plaintiff: CSI actually spoke to Plaintiff on February 7, February 21, March 7, and March 14, 2006.  CSI left messages for Plaintiff on February 7, February 8, February 13, February 15, and February 20, 2006.  CSI called Plaintiff but did not leave messages for her on February 7, February 8, February 13, February 15, February 16, February 20, February 21, February 22, February 23, and February 24, 2006. Plaintiff called CSI on February 9, 2006 and left a message.

At CSI, new hires go through a full one-week training course which is a classroom based program that teaches them the requirements of the FDCPA and state law requirements that are more restrictive than the FDCPA.  The training course includes a manual that is given to the new employees.  The manual includes sections on the FDCPA, and,  more specifically, sections on the disclosures to be made under the FDCPA.  The new employees also learn how to use the collection software and role play collection calls with debtors.  At the end of the week, the employees are given a written examination on the FDCPA and state laws, and must achieve at least 90% proficiency in order to pass.[8]   They then move into a small group setting for another three weeks, where they begin to work accounts under supervision.  After they have completed

---

[6]CSI disputes Plaintiff's claim that it repeatedly threatened to sue Robert Wayne Kendrick and that it threatened to take his house and property as payment for Plaintiff's debt.  (Citing Schroeder Aff. at ¶ 6.)

[7]CSI disputes whether disclosure was necessary to Robert Wayne Kendrick under the FDCPA (discussed in greater detail below).

[8]In addition to the testing at the end of the one-week class, employees are again tested on the FDCPA/state laws at the end of thirty (30) days, and then on an annual basis.

the small group period, they are assigned to a portfolio.  At the time Ryan was hired (and at the time CSI had the Chase Bank/Linda Kendrick account) employee training consisted of the week long classroom course, with the small group element incorporated into it.

In addition to this training and testing, CSI also conducts a monthly Complaint Prevention class which all collectors are required to attend.  This class reviews the laws and offers guidance for handling accounts and preventing complaints and lawsuits.  The class is taught by CSI's General Counsel.  However, because of the number of collectors employed by CSI, typically, a collector attends the Complaint Prevention class only once or twice a year.

CSI also maintains a Quality Assurance Department which monitors calls and accounts on a daily basis for compliance.  Managers are seated on the collection floor with the collectors and are constantly monitoring collection activity and are able to, and do, monitor the calls on a random basis.

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of explaining the basis of his motion.  *Celotex*, 477 U.S. at 323.  "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial."  *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted).  The non-moving party then bears the burden of pointing to specific facts

4

demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[9]

CSI proffers arguments in favor of summary judgment on (Part I) Plaintiff's alleged FDCPA violations, and (Part II) Plaintiff's invasion of privacy claims.

**I.    FDCPA Violations**.

**A.    CSI Position.**

CSI contends that it is entitled to summary judgment on Plaintiff's FDCPA claims

---

[9] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

because: 1) CSI provided the requisite written notices under the FDCPA; 2) CSI provided

"meaningful disclosure" in its communications with Plaintiff; 3) CSI's communications did not

improperly convey any threat to Plaintiff; 4) CSI did not violate the FDCPA by contacting

Plaintiff's husband; 5) CSI communications with Linda G. are protected under the bona fide error

defense; and 6) CSI did not use any unfair or unconscionable means to collect the debt.

### 1.   CSI Provided the Requisite Written Notices under the FDCPA.

15 U.S.C. § 1692g(a) requires that:

> Within five days after the initial communication with a consumer in connection
> with the collection of any debt, a debt collector shall, unless the following
> information is contained in the initial communication or the consumer has paid
> the debt, send the consumer a written notice containing –
>
>> (1) the amount of the debt;
>> (2) the name of the creditor to whom the debt is owed;
>> (3) a statement that unless the consumer, within thirty days after receipt of
>>      the notice, disputes the validity of the debt, or any portion thereof,
>>      the debt will be assumed to be valid by the debt collector;
>> (4) a statement that if the consumer notifies the debt collector in writing
>>      within the thirty-day period that the debt, or any portion thereof, is
>>      disputed, the debt collector will obtain verification of the debt or a
>>      copy of a judgment against the consumer and a copy of such
>>      verification or judgment will be mailed to the consumer by the debt
>>      collector; and
>> (5) a statement that, upon the consumer's written request within the
>>      thirty-day period, the debt collector will provide the consumer with
>>      the name and address of the original creditor, if different from the
>>      current creditor.

*Id.*

CSI submits that it provided the required written disclosures informing Plaintiff of her

right to dispute the alleged debt, within five (5) days of the initial communication.  Plaintiff

produced a copy of CSI's letter with these disclosures in response to CSI's discovery requests.

6

CSI argues that based on this disclosure letter, Plaintiff's claims set forth in paragraph 14, subparts A and C of her complaint, as to written communications, must fail as a matter of law.

### 2.     CSI Provided "Meaningful Disclosure" in Its Communications with Plaintiff.

CSI denies that it violated the FDCPA in regards to its alleged failure to make certain identifying statements required by the FDCPA during its collection calls to Plaintiff.  Plaintiff contends that CSI violated 15 U.S.C. § 1692d(6) by failing to provide "meaningful disclosure" and 15 U.S.C. § 1692e(11) by failing to "provide the debt collection warning" required by the FDCPA in the calls to Plaintiff.

CSI claims that it made the required meaningful disclosure.  15 U.S.C. § 1692d(6) requires that a debt collector provide "meaningful disclosure" of his identity during the placement of telephone calls to the debtor.  CSI claims that while "meaningful disclosure" is not defined by the statute, courts have interpreted this section to require a debt collector to "disclose enough information so as not to mislead the recipient as to the purpose of the call." *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D.Cal. 2005).  Further, CSI argues that one court has held that § 1692d(6) is satisfied as long as the employee, if using a pseudonym, accurately discloses the name of the debt collection agency and explains the nature of its business.  *Wright v. Credit Bureau of Ga., Inc.*, 548 F. Supp. 591, 597 (N.D.Ga.1982).  Another court has indicated that disclosure of the employee's identity, along with disclosure of either the name of the debt collection agency or the original creditors, satisfies the meaningful disclosure requirement of § 1692d(6).  *Joseph v. J.J. MacIntyre Cos. Inc.*, 238 F. Supp. 2d 1158, 1167 (N.D. Cal. 2002) (court denied a motion to dismiss a 1692d(6) claim on the basis that the

complaint alleged that the collector identified herself by her pseudonym, but did not identify either the collection agency or the creditor for whom she was collecting).  15 U.S.C. § 1692e(11) requires that a debt collector in the initial communication with the debtor, if the initial communication with the debtor is oral, indicate that the "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . ."[10]

CSI contends that the disclosure by an individual debt collector of his pseudonym, the name of the creditor, and the nature of the business, which was indisputably done here, "can hardly be termed harassment, oppression, or abuse" and thus meets the meaningful disclosure requirements of § 1692d(6).  By Plaintiff's own admissions, there is no dispute that Ryan identified himself (using his pseudonym), the creditor (Chase Bank), and the fact that he was calling to collect on Plaintiff's defaulted Chase debt, i.e., the nature of his business.[11]  Given this

---

[10]This disclosure requirement is commonly referred to as the "Mini-Miranda."

[11]Plaintiff testified that Ryan called her on February 7, 2006:

> A. He told me he was calling on behalf of Chase Bank and that he was willing to work with me on this debt and that if I could come up with someone who was willing to put this debt on their credit card, that I would only have until like that afternoon or the next afternoon or something.
>
> Q. To do what?
>
> A. To find somebody to put this debt on their credit card.
>
> Q. In order to take advantage of this settlement offer?
>
> A. I guess.
>
> Q. Did he say anything else?
>
> A. I mean, that's just what he said, you know, that he could take that at that time.
>
> Q. How much did he – do you remember how much he said he would take?
>
> A. It seems to me like it was 73.
>
> * * *

information, CSI claims that there is "no doubt" that Ryan disclosed enough information so as not to mislead Plaintiff as to the purpose of the call, thus satisfying the meaningful disclosure requirements.

Assuming *arguendo* that Ryan did not make all of the required disclosures, CSI contends that Plaintiff's claims of inadequate disclosure would still fail under the FDCPA's bona fide error defense. To qualify for the defense, a debt collector must show that: (1) the presumed FDCPA violation was not intentional; (2) the presumed violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005).

CSI argues its company procedures were in place to avoid FDCPA violations of this sort. Ryan had been trained and was familiar with these procedures, and while maintaining that he followed these procedures and the FDCPA requirements, testified that if he did not identify his employer or that the information obtained would be used for debt collection purposes, any such failure was unintentional, inadvertent and the result of a bona fide error. Accordingly, CSI argues that the claims set forth in Paragraph 14.B and 14.C of the Complaint are due to be dismissed.

### 3.     CSI's Communications Did Not Improperly Convey Any Threat to Plaintiff.

15 U.S.C. § 1692e provides that: "A debt collector may not use any false, deceptive, or

---

Q. $7300?

A. Uh-huh.

Plt's Dep., pp. 74-75. See also Plaintiff's Interrogatory Responses set forth in n.6, *infra*.

9

misleading representation or means in connection with the collection of any debt." It also states that "the following conduct is a violation of this section . . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.*

CSI argues that Plaintiff's entire § 1692e(5) claim is based entirely on Plaintiff's allegation that on February 7, 2006, Ryan called Plaintiff about the Chase debt, offered to settle the debt for $7,300 and to contact him by 5:30 "or else." It claims that this "ambiguous" statement falls far short of an actionable threat under § 1692e(5), especially in light of the settlement offer.

To support this position, CSI cites *Sturdevant v. Thomas E. Jolas, P.C.*, 942 F. Supp. 426 (W.D. Wis. 1996) (letter to debtor that stated that creditor had not decided what future action would be taken not a threat within meaning of § 1692e) and *Kleczy v. First Federal Credit Control, Inc.*, 486 N.E. 2d 204 (Ohio App. 1984) (use of the words "avoid further action" not sufficiently threatening to constitute a violation of the FDCPA). Consequently, CSI maintains that it is entitled to summary judgment due to the fact that "or else" does not constitute an actionable statement.

### 4.    CSI Did Not Violate the FDCPA by Contacting Plaintiff's Husband.

CSI argues that 15 U.S.C. § 1692c(b) allows a collection agency to contact the spouse of the debtor. The language of 15 U.S.C. § 1692c(b) states that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer[.]" CSI claims that this section specifically includes an individual's spouse in the definition of "consumer."

To support this claim, CSI cites *Pelfrey v. Educational Credit Management Corp.*, 71 F.

Supp. 2d 1161, 1165 (N.D. Ala. 1999) (noting that for purposes of § 1692c(b), "[c]ontacts with the consumer's relatives, other than the spouse, violate the FDCPA").  Because there is no dispute that the Kendricks were married at the time CSI contacted Mr. Kendrick, and there is not any statutory exception based upon the fact that the parties may be separated, but not divorced, the claims set forth related to the contact with Plaintiff's husband fail as a matter of law.

Finally, CSI claims that any claims based on threats of litigation directed towards Robert Wayne Kendrick would belong to Mr. Kendrick and that Plaintiff would have no standing to bring these claims.  Thus, CSI argues that Plaintiff's claims set forth in Paragraph 14.F of the complaint are due to be dismissed as a matter of law.

### 5.      CSI Communications with Linda G. Are Protected under the Bona Fide Error Defense.

CSI claims that any claim based upon the mistaken call to Linda G. fails under the FDCPA's bona fide error defense.  It argues that because Ryan obtained the number from CSI's records in an attempt to contact the debtor at what he reasonably believed, under the circumstances, to be Plaintiff's work phone number, the bona fide error defense applies.  As best as CSI can determine, it was provided with an "alternative" number for Linda Kendrick through the creditor, Chase Bank.[12]  Despite the preventative measures CSI has in place, Ryan called Linda G. in an attempt to reach Plaintiff.

Furthermore, CSI also denies that Ryan revealed any private or confidential information

_____

[12]CSI rests this contention on the fact that Chase Bank usually supplies contact information for the accounts forwarded to CSI.  Moreover, CSI's account notes do not indicate that CSI undertook any efforts to "skip trace" Plaintiff.  The alternative telephone number was also listed in the "employer" section of the account notes, which is a strong indicator that the number was provided to CSI by the creditor.  CSI claims that it has generally found that the contact information received from Chase is reliable and accurate.

to Linda G.  It claims that as soon as Ryan determined that he in fact was not speaking with the Plaintiff, he ended the call and had no further contact with Linda G.  It claims that assertions by Plaintiff to the contrary constitute inadmissible double hearsay and cannot be used in opposition to a summary judgment motion.

><b>6.</b>      <b>CSI Did Not Use Any Unfair or Unconscionable Means to Collect the Debt.</b>

15 U.S.C. § 1692f states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  This section statutorily prohibits certain "unfair practices" such as such as accepting post-dated checks, communicating with a consumer by post card, and imposing certain charges such as collect telephone charges.

CSI argues that Plaintiff has never specified any particular violation of this section or provided any evidence of any such violation.  Accordingly, CSI claims that Subpart 14.G should be dismissed.[13]

><b>B.</b>      <b>Plaintiff's Response.</b>

Plaintiff contends that CSI is not entitled to summary judgment because 1) CSI's disclosures were "overshadowed" by the oral threats made by Ryan; 2) CSI's oral communications to Robert Wayne Kendrick violated the FDCPA to the extent that such communications went beyond the lawful ability of CSI to seek location information; 3) CSI's collection practices violate the catchall provision of the FDCPA; and 4) CSI cannot satisfy the

---

[13]In addition, Subpart 14.H of Plaintiff's complaint states that CSI "otherwise violat[ed] the prohibitions and mandates" of the FDCPA.  CSI claims that without any specificity as to either law or evidence, this subpart is also due to be dismissed.

requirements of the Bona Fide Error defense.[14]

### 1.    CSI's Disclosures were "Overshadowed" by the Oral Threats Made by Ryan that Plaintiff Must do Something About the Debt "Or Else."

Plaintiff argued that CSI's letter, which Plaintiff concedes states disclosures required by the FDCPA, was overshadowed by the oral threats made on and after the same date as CSI's disclosure letter, by Ryan that Plaintiff must do something by the next Tuesday "or else." Plaintiff also claims that CSI's disclosure was also overshadowed by the coercive extortion visited upon Robert Wayne Kendrick after the date of the letter.

### 2.    CSI's Oral Communications to Robert Wayne Kendrick Violated the FDCPA.

While Plaintiff concedes that 15 U.S.C. § 1692c(d) allows CSI to contact the spouse of a consumer, she argues that the section does not give CSI "carte blanc" freedom to otherwise

---

[14]CSI correctly points out in its reply brief (Doc. 25) that Plaintiff's response fails to even address a number of CSI's arguments in support for summary judgment.

1. Plaintiff has raised no legal or factual argument in response to CSI's motion for summary judgment on the issue of the written notice sent to Plaintiff as required by 15 U.S.C. §§ 1692g(a) and 1692e(11).

2. As to the requirements of "meaningful disclosure," 15 U.S.C. § 1692d(6), Plaintiff has cited no authority in opposition to CSI's argument and authority that the disclosures made by Tim Ryan, as testified to by Plaintiff, satisfied the FDCPA's requirements.

3. Nor has Plaintiff cited any authority to refute CSI's argument and authority that the purported statement by Ryan that Plaintiff needed to find someone to pay the bill that day "or else," especially in the context of the proposed settlement offer, did not, as a matter of law, violate § 1692e(5) of the FDCPA.

4. Plaintiff has not refuted that the fact of contact by CSI with Plaintiffs' husband, in and of itself, did not violate the FDCPA's proscription against unauthorized third party contacts under 15 U.S.C. § 1692c(b).

5. Plaintiff has not refuted in any way CSI's denial that Ryan revealed any personal information to the "other" Linda Kendrick.

6. Plaintiff does not respond to or cite any authority in opposition to CSI's motion for summary judgment as to the state law privacy claim.

violate the FDCPA with its communications.  Plaintiff argues that CSI repeatedly claimed that

Robert Wayne Kendrick owed this debt, and repeatedly threatened to sue him and/or take his

home and property if this debt was not paid, even though CSI admitted, in its discovery

responses, that he was never considered to be legally liable on this debt.  Plaintiff claims that

these threats were meant for an illegitimate purpose - to unfairly and oppressively cause him to,

in turn, exert unfair and oppressive pressure upon Plaintiff to get the pressure off of him.

 To support her claim that she has the right to recover for the allegedly unfair collection

practices directed towards Robert Wayne Kendrick, Plaintiff cites *Miller v. Wolpoff & Abramson,*

*L.L.P.*, 321 F.3d 292 (2nd Cir. 2003) (consumer need not have been injured by an FDCPA

violation arising from an attempt to collect a debt to have standing to assert that the violation was

targeted at him) and *Diaz v. D.L. Recovery Corp.*, 486 F Supp 2d 474 (E.D. Pa. 2007) (15 USCS

§§ 1692-1692o, cannot be interpreted to hold that consumer cannot have claim under 15 USCS

§§ 1692b(1), 1692c(b), for conduct that is directed towards third party and not consumer (him)

(her) self; 15 USCS § 1692k(a) provides that debt collectors can be held liable for violating the

FDCPA "with respect to any person," and violations of 15 USCS §§ 1692b(1), 1692c(b), even if

made in communications with others about consumer's debt, qualify as violations "with respect

to" consumer.)[15]

 Essentially, Plaintiff argues that because the communications with Robert Wayne

---

[15]Not only are these cases not controlling law, but also, it appears that Plaintiff has misinterpreted the language of the holding in *Miller v. Wolpoff & Abramson*.  This case appears to stand for the proposition that a plaintiff does not have to prove an injury in order to assert a claim under the FDCPA.  It does not appear to say anything about a party's standing to assert claims related to communications with third parties.

 *Diaz v. D.L. Recovery Corp*. can properly be cited for the proposition that under this "Court's interpretation of the statute, violations of §§ 1692b(1) and 1692c(b) qualify as violations "with respect to," 15 U.S.C. § 1692k(a), the consumer.  *Id.* at 478.  This quote appears to better sum up the argument that Plaintiff is trying to present.

Kendrick were "with respect to" debt owed by Plaintiff, she can recover for the FDCPA violations.

### 3.     CSI's Collection Practices Violate the Catchall Provision of the FDCPA.

Plaintiff contends that CSI's collection tactics, such as repeat calling and threatening litigation, are unfair and oppressive in violation of the catchall provision of the FDCPA.  CSI called Plaintiff thirty-two (32) times over the course of a two month period.[16]  It also repeatedly threatened to sue both Plaintiff and Robert Wayne Kendrick over the debt.  Based on these practices, Plaintiff claims CSI is liable under the FDCPA.

### 4.     CSI Cannot Meet the Requirements of the Bona Fide Error Defense.

Plaintiff claims that CSI's contention that the Bona Fide Error defense applies in this case is unsupported by the admissible evidence.  She claims that CSI cannot rely upon its testimony concerning training materials not provided in response to discovery requests.  According to Plaintiff, she sought, in Requests for Production all documents upon which CSI relies for its claimed bona fide error defense.  CSI refused to produce any materials in response to these requests, citing various objections.  Plaintiff claims that because these documents were not produced, the Court may not consider them in determining the appropriateness of the Bona Fide Error defense.[17]

Alternatively, Plaintiff argues that there is no evidence that any "monitoring" of CSI's employees satisfies the requirement that the debt collector maintain procedures reasonably

---

[16]Of the alleged 32 calls, a much smaller number were completed.

[17]Plaintiff cited no authority to support this contention.

adopted to avoid any such error.  She also claims that there is no evidence that the "Quality Control" team of CSI does anything to discourage violation of the FDCPA.  Instead, Plaintiff implies that CSI's argument is "borne out by CSI's presence in federal court as an oft-sued FDCPA defendant."

     **C.**     **CSI's Reply.**

**Because Plaintiff did not Raise the Frequency of Collection Calls as a Basis of Relief in Her Complaint, She Cannot Raise this New Claim for the First Time at Summary Judgment.**[18]

Plaintiff argued for the first time in her Response Brief that the number of calls made by CSI to Plaintiff constituted a violation of the FDCPA.  CSI claims that because Plaintiff did not raise this issue in her Complaint, she is barred from doing so in a summary judgment brief.  CSI argues that although the Federal Rules allow a liberal pleading standard, that standard does "not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates*, *McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004).  Such a claim based upon the number of telephone calls was not pled in the Complaint, and CSI objects to amendment of the pleadings through summary judgment briefing.

Additionally, CSI argues that Plaintiff cited absolutely no authority for the proposition that this number of calls over this period of time, without more, violates § 1692d of the FDCPA, especially since the vast majority of these calls were unanswered and CSI left no message.  In enacting the FDCPA, Congress intended to create a balance "between the interests of consumers

---

[18]CSI also responded to Plaintiff's argument that CSI's bona fide defense fails, however, this response did not add any additional arguments other than to point out that CSI's evidence is unrefuted even without the evidence challenged by Plaintiff's motions to strike.

in freedom from harassment and the interests of ethical debt collectors in freedom from

unnecessary restrictions." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 26 (2d Cir.

1989).

> Subsection 1692d prohibits only oppressive and outrageous conduct. *Bieber v. Associated Collection Serv., Inc.*, 631 F. Supp. 1410, 1417 (D. Kan.1986). It is not intended to shield even the least sophisticated recipients of debt collection activities from the inconvenience and embarrassment that are natural consequences of debt collection. *Id.* In fact, it would be inconsistent with the language of subsection 1692d to construe the subsection to forbid conduct that is not intended and does not naturally tend to harass, oppress or abuse.

*Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 394 (D. Del. 1991). Section 1692d "prohibits

a debtor's tender sensibilities only from oppressive and outrageous conduct." *Bieber*, 631 F.

Supp. at 1417.

CSI argues that these calls do not evidence, on the part of CSI, any "intent to annoy, abuse,

or harass" Plaintiff in violation of § 1692d(5). They instead reflect an effort to contact Plaintiff to

resolve this debt, which she admitted to owing, and on which CSI attempted to reach payment

agreements with Plaintiff, including payment of a reduced balance and payment over a period of

time. CSI supports its argument by citing *Chambers v. Habitat Co.*, 68 Fed. Appx. 711, 715 (7th

Cir. 2003) (dismissing FDCPA claim for failure to allege any facts showing that debt collector's

collection efforts were made with intent to harass or oppress plaintiff); *Masuda v. Thomas

Richards & Co.*, 759 F. Supp. 1456, 1465-66 (C.D. Cal. 1991) (mailing of 48 letters to debtor not

"harassing" or violation of § 1692d of the FDCPA); *Grismore v. United Recovery Systems, L.P.*,

2006 WL 2246359, at *6 (D. Ariz. 2006) ("Defendant's collection notes show three separate

discussion[s] with Plaintiff and nineteen telephone calls placed to her house from September to

December 2, 2004. . . . The Court finds that Defendant placed the calls to resolve the debt, and

does not find any evidence of continuous calling with intent to annoy, abuse, or harass.").

## II.     Invasion of Privacy Claim.

### A.     CSI Position.

CSI claims that it is entitled to summary judgment on Plaintiff's invasion of privacy claim because its actions of making a single telephone call to Linda G. and two calls to Robert Wayne Kendrick clearly do not meet the "egregious circumstances" necessary to support liability for invasion of privacy.

While Alabama law recognizes an invasion of privacy claim arising from collection activities, the law also recognizes the right of a creditor to collect the money owed to it. Accordingly, a claim for invasion of privacy arises only under egregious circumstances, circumstances that are lacking here.

Alabama law recognizes an invasion of privacy claim based upon a creditor's collection efforts where there is a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Jacksonville State Bank v. Burwell*, 481 So. 2d 863, 865 (Ala. 1985); *Liberty Loan Corp. v. Maxwell*, 410 So. 2d 45, 47 (Ala. 1982).   As the Alabama Supreme Court has cautioned, however, not every effort to collect a debt rises to the level of a cause of action for the debtor. "The mere effort . . . to collect a debt cannot **without more** be considered a wrongful and actionable intrusion.   A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt." *Maxwell*, 410 So. 2d at 47-48 (quoting *Norris v. Boskin Stores, Inc*., 132 So. 2d 321, 323 (Ala. 1961)) (emphasis added).   It is only where the creditor or collector takes actions which exceed the bounds of reasonableness, that the debtor has an action against the

18

creditor for injuries suffered. *See Burwell*, 481 So. 2d at 865-66.

CSI claims that the calls to Linda G. and Plaintiff's husband fall within the permissible bounds of Alabama law as it relates to collection efforts. As noted, the FDCPA allows a creditor to contact a spouse, which is what CSI did here. There is no authority for the contention that two telephone calls to the husband of the debtor violates Alabama privacy law. Similarly, the one telephone call to Linda G. does not itself constitute an invasion of privacy where CSI reasonably and legitimately, if mistakenly, believed that it was trying to contact debtor (who admittedly refused to return CSI's calls).

**B.      Plaintiff's Response.**

Plaintiff failed to reply or in any way respond to CSI's claim that it is entitled to summary judgment on Plaintiff's state law invasion of privacy claim.

### CONCLUSIONS OF THE COURT

At the pretrial conference (see order filed December 3, 2007), the plaintiff listed the following claims, numbered as indicated hereinafter:

(1) "overshadowing" of any written disclosure of dispute rights under the FDCPA;

(2) threatening to file suit which was not intended to be done;

(3) threatening to unlawfully seize plaintiff's and/or Robert Wayne Kendrick's property;

(4) failure to provide meaningful disclosure of the identity of the defendant in calls to Robert Wayne Kendrick and plaintiff;

(5) calling plaintiff at least 32 times in a 2-month period;

(6) Plaintiff acknowledged that she had received written notice of dispute rights;

(7) revealing private information to Robert Wayne Kendrick;

19

(8) revealing "private hearsay" information to Linda G. Kendrick;

(9) state law claim of negligently or intentionally disclosing private information to Robert Wayne Kendrick and Linda G. Kendrick.

The court starts with a rejection of the defendant's position that the FDCPA claims were not adequately alleged in the plaintiff's complaint.  The court concludes that they were sufficiently stated to give notice to the defendant.  In so concluding the court has made the following comparisons:

| Complaint | Pretrial Order |
|---|---|
| Paragraph 14 | |
| A | (1) and  (6) |
| B | (4) |
| C | (1) and (6) |
| D | (2) |
| E | (7) and (8) |
| F | (3) |
| G | (3) and (5) |

In a response posed to the plaintiff by the court, the plaintiff has stated that the following Title 15 Code Sections cover the claims listed by the plaintiff in the pretrial order, seriatim:

(1) 1692g

(2) 1692d, 1692e, 1692e(5), and 1692f(1)

(3) 1692d, 1692e, 1692e(4) and/or (5), 1692f, and 1692f(6)

(4) 1692d(6)

(5) 1692d

(6) 1692g

(7) 1692d and 1692f

(8) 1692d and 1692f.

The court initially addresses each of these claims.[19]   Any purported claims not stated in the pretrial order have been abandoned.

(1) The Plaintiff does not refer to any particular provision of Section 1692g.  The court does not find any provision under Section 1692g which provides for an "overshadowing" claim. No controlling case so provides.  The Plaintiff has acknowledged that she timely received a letter with the contents required by Section 1692g.  In any event, the only purported evidence of "overshadowing" (if that claim is legally available) is that the Defendant gave her a limited time to settle the admitted debt of $9,150.04 for $7,300.00.  The motion will be granted as to pretrial order claim (1).

(2) Plaintiff claims that the defendant threatened to take action which was not intended to be done.  Plaintiff asserts that this violated §§ 1692d, e, e(5) and f(1).  There is no substantial evidence to support an harassment or abuse claim under 1692d.  Plaintiff had five conversations with Ryan.  The first was in February 2006.  The last was in March 2006.  The thrust of the five conversations was to try to settle the case for a lesser amount.  There were no threats other than a time limit on the proposed settlement.  There were no abusive calls.  There is no evidence of any

---

[19]The court notes that the only controlling substantive Eleventh or Fifth Circuit case cited by either party with reference to FDCPA is *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), cited by the plaintiff.  The court has considered and applied *Jeter*.

Section 1692e or f(1) violation.  The motion will be granted as to claim (2) in the pretrial order.[20]

(3) The court concludes that there were no threats to seize the plaintiff's property. Plaintiff does not have standing to make claims for her former husband as to whom she admitted there were irreconcilable differences and even fear on her part for a number of years.  They had been separated for several years.  The motion will be granted as to listed (3).

(4) Plaintiff has no standing to complain of calls to her husband.  There is some evidence that Ryan failed to identify the name of his employer, the Defendant here.  The motion as to listed (4) will be denied for that reason.

(5) As indicated, there were not more than five conversations with Ryan.  There was no harassment or abuse.  On other occasions, the Plaintiff did not answer.  On at least one occasion of the five, she called Ryan.  There was no harassment or abuse.  The motion will be granted as to (5).

(6) Plaintiff acknowledged that she received written notice.  The husband is not a party here.  The motion will be granted as to (6).

(7) The conversation with the husband does not rise even close to a 1692d or 1692f violation.  The motion will be granted as to (7).

(8)  The conversation with Linda G. Kendrick does not rise even close to a 1692d or 1692f violation.  The motion will be granted as to (8).

For the reasons stated with reference to the alleged harassment and/or abuse claims under the FDCPA, the motion will be granted as to the state law claim.

---

[20]A reading of the deposition of plaintiff in full, reflects relative minor efforts to settle an admitted debt.

This the 21st day of December, 2007.


_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**